UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PEGGI MERRILL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Cause No.: 3:08-CV-54 |
| CITY OF SOUTH BEND, INDIANA, and STEVEN HAMMER/JOHN DOE, | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by defendants City of South Bend, Indiana ("the City"), Steven Hammer ("Hammer") and Chris Slager ("Slager," f/k/a John Doe) on April 17, 2009. Docket at 17. Plaintiff Peggi Merrill ("Merrill") filed a response in opposition to the motion on June 17, 2009. Docket at 19. The defendants informed the court that they did not intend to file a reply brief (which would have been due on or about July 2, 2009) and so the motion is ripe for resolution. For the reasons discussed in this Opinion and Order, the motion for summary judgment is DENIED.

## FACTUAL BACKGROUND

Merrill brought this action pursuant to 42 U.S.C. § 1983 alleging that defendants Hammer and Slager, both police officers employed by the City of South Bend, violated her Fourth Amendment rights when they arrested her on January 29, 2006. Plaintiff's Memorandum in Opposition to Defendant's [sic] Motion for Summary Judgment ("Plaintiff's Memorandum"), docket at 19, p. 1. Merrill also asserts a § 1983 claim against the City for its alleged "failure to supervise, control, train and discipline its officers." *Id.* Finally, Merrill has asserted a pendent state claim for battery against Hammer and Slager. *Id.*

On the day Merrill was arrested, Hammer was on duty and received a radio dispatch to investigate a report of an unwanted person on the premises of the Beacon Bowl, a bowling alley in South Bend. Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Memorandum"), docket at 17-2, p. 2. When Hammer arrived at the establishment he met with Matthew Kindig, the assistant manager, who told Hammer that he wanted Merrill removed from the premises because she was causing a disturbance. *Id.* Hammer approached Merrill and, according to his affidavit, "could instantly ascertain that Plaintiff was intoxicated." *Id.* (quoting Affidavit of Steven Hammer, Defendants' Exhibit D, ¶ 5). Hammer also stated in his affidavit that when he approached Merrill she was "arguing with an ex-boyfriend, and [when Hammer] advised her that the management wanted her to leave the premises, she directed a series of expletives at Affiant." *Id.*, ¶ 6. Hammer then asked Merrill "multiple times to leave the premises and . . . finally . . . warned Plaintiff that if she did not leave the premises voluntarily, she would end up going to jail." *Id.*, ¶ 7. According to Hammer, Merrill continued shouting expletives at the officer and allegedly stated, "fuck you, then take me to jail." *Id.* Hammer then handcuffed Merrill and, after Slager arrived on the scene, Slager "took Plaintiff to the St. Joseph County jail." *Id.*, ¶ 10. Hammer states that Merrill "was not combative but was cooperative and compliant with Affiant's demands, although she did continue to shout expletives while leaving the premises." *Id.*, ¶ 11. Hammer claims that he "did not have to utilize a significant amount of force in arresting Plaintiff . . . ," that he "never threw Plaintiff against a wall and never threw Plaintiff into a police vehicle." *Id.*, ¶ 12. Hammer concludes by stating that he "did not escort Plaintiff to the St. Joseph County jail and Plaintiff had no apparent injuries of any kind when she departed the Beacon Bowl for the St. Joseph County jail." *Id.*, ¶

14. The defendants also present excerpts from the deposition of Officer Slager, who testified that he never threw Merrill against a wall or into a patrol car, that he never witnessed Hammer do that, and that he never saw Merrill fall down or stumble during the time he observed her. Defendants' Memorandum, Exhibit C, pp. 53-56. Merrill, on the other hand, contends that one of the officers (she could not recall which one) "threw me into the wall and he handcuffed me." *Id*., Exhibit A, Deposition of Peggi Merrill, p. 19. She claimed that the entire left side of her body came into contact with a wall during this incident. *Id.* It is uncontested that two days after her arrest, Merrill had surgery to repair a fractured left elbow, an injury she maintains she suffered during her arrest. Furthermore, Merrill conceded that she had been drinking on that day and that she had consumed "[t]wo, three beers and two Jack and cokes." *Id*., p. 14. She admitted that she was intoxicated at the time. *Id.* She also testified that she was "sure" that she used foul language when talking to the officers and during her arrest. *Id*., p. 15. Merrill also testified that the officer that handcuffed her and threw her into the wall was the same officer that transported her to the jail. *Id*., p. 20. This contradicts the testimony of the officers, who stated that Hammer handcuffed Merrill while she was still inside the Beacon Bowl and that Slager was the officer who transported her to the jail. And, of course, both officers deny pushing or shoving Merrill.

In their motion for summary judgment, defendants Hammer and Slager argue that they are entitled to judgment in their favor because the evidence establishes that they did not use excessive force in arresting or transporting Merrill, and that they are entitled to qualified immunity from her claims. The City argues that it is entitled to summary judgment since, at the time of the incident giving rise to this lawsuit, it had in place an adequate procedure and policy for training and supervising its police officers and Merrill fails to present evidence to refute this

3

fact.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986)). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511.

The motion for summary judgment, as it relates to defendants Hammer and Slager, is quite easily resolved. The officers recount their version and recollection of the events surrounding their encounter and arrest of Merrill while she recites a much different version. While the defendants dedicate several pages of their memorandum to a discussion of the law regarding excessive force and the law regarding qualified immunity, the court does not believe that a detailed legal analysis is necessary in the context of a motion for summary judgment. Hammer and Slager contend that Merrill, "perhaps due to her admitted level of intoxication, is unable to identify precisely when her injury occurred or who caused it." Defendants' Memorandum, p. 7. Hammer and Slager contend, then, that Merrill has failed to demonstrate that either officer used excessive force during the arrest and her § 1983 claim must fail as a result. This is clearly not the case. While Merrill never specifically identifies either Hammer or Slager as the officer who allegedly pushed or shoved her into a wall, arguably causing her injury, she nonetheless maintains that one or the other of them did so. They deny it. Only a jury can resolve this clear and obvious credibility issue.

Hammer and Slager also argue that they are entitled to summary judgment on Merrill's claims under the doctrine of qualified immunity. That doctrine holds that police officers are immune from lawsuits for excessive force (among other types of claims) unless the officers' conduct violated "clearly established standards." *Saucier v. King*, 533 U.S. 194 (2001). That is,

the doctrine of qualified immunity protects government officials such as police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is black letter law, however, that police officers may not use excessive and unnecessary force to effectuate an arrest. In the present case, Merrill contends that either Hammer or Slager shoved or pushed her into a wall in order to subdue her and handcuff her. She alleges that this force resulted in the fracture of her left elbow. However, the parties apparently agree that Merrill was not physically resisting the officers when she was arrested. Thus, the issue of whether one or both officers used excessive force at some point during the incident is for a jury to determine since resolution of this material issue largely (if not exclusively) involves credibility determinations. The doctrine of qualified immunity serves as a complete immunity from suit, not simply an affirmative defense. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Given the state of the record at this point, especially the credibility issue that is at the heart of the dispute between Merrill and the officers, it is clear that application of the doctrine of qualified immunity would be improper and that Merrill should be permitted to proceed with her claims against both Hammer and Slager. If in fact either officer used unnecessary or excessive force to arrest Merrill even though she was not resisting the officers or being physically abusive or physically threatening to them, then their actions would most certainly violate clearly established law. Even the most inexperienced police officer should be fully aware that he or she cannot use excessive force to effectuate an arrest. For these reasons, the motion for summary judgment is denied as to those claims.

The City contends that it is entitled to summary judgment because Merrill fails to

produce sufficient evidence to establish that the City failed to train and/or supervise its police officers properly and that this alleged failure resulted in Merrill's injuries. Defendants' Memorandum, p. 4. The City correctly states that "a municipality cannot be held liable under § 1983 on a respondeat superior basis." *Id.* (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1994)). Instead, a plaintiff such as Merrill must show that the municipality had in place a practice, policy, procedure, or custom that resulted in the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 (1989). If, for example, the City of South Bend failed to train its police officers properly and, as a result, the officers used excessive force in arresting an individual, the City itself could be held liable by a jury for any injuries that individual sustained.

In this case, the City contends that "after months of discovery and depositions, Plaintiff has failed to identify any particular unconstitutional policy and/or custom that could be said to have lead to any alleged constitutional violation suffered by Plaintiff. The Plaintiff has not identified any local ordinance, regulation, code or other written policy that, on its face, can be construed to be unconstitutional." Defendants' Memorandum, p. 5. Furthermore, the City argues that "both of the police officers who came into contact with Plaintiff had received extensive training from the South Bend Police Department as evidenced by their training records. . . . The training records of these officers demonstrate not only that they were well trained officers, but also demonstrate that Defendant City of South Bend maintained a thorough and rigorous officer training program." *Id.*, p. 6.

In her response, Merrill contends that "the City of South Bend is liable under *Monell* for its policy or practice of failing to adequately train its police officers to deal with difficult or

7

belligerent defendants, especially where the main problem is verbal abuse from a defendant. Merrill asserts that this failure amounted to deliberate indifference with respect to her rights, resulting in physical abuse and injury suffered at the hands of Defendants Hammer and/or Slager." Plaintiff's Memorandum, p. 9.

The City presents evidence that it claims supports its contention that its police officers, including Hammer and Slager, were and are adequately trained. For example, the City presents the affidavit of Darryl Boykins, the Chief of Police for the City of South Bend. Defendants' Memorandum, Exhibit E. In his affidavit Boykins states that "throughout this time, the South Bend Police Department has had an extensive training program in place for all uniform officers . . . ." *Id.*, ¶ 3. Boykins states that the City "maintains a duty manual that contains specific guidance for police officers in regard to the use of force in arresting [a] suspect and effectuating arrests." *Id.*, ¶ 4. He states that "all South Bend police officers involved in this case, as evidenced by their training records . . . received ongoing training after joining the police department on all aspects of the use of force in making arrests." *Id.*, ¶ 6. In support of these statements, the City presents certain training records relating to Hammer and Slager that it claims demonstrate that both officers received extensive and adequate training provided by the City. *Id.*, Exhibits G and H.

Merrill counters this evidence by raising an issue concerning the training of Hammer and (especially) Slager. Plaintiff's Memorandum, pp. 9-11. Merrill contends that portions of the deposition testimony of both Hammer and Slager contradict the assertions in Boykins's affidavit. She contends, for example, that "the deposition testimony of Slager indicates that he received very little training regarding belligerent defendants, especially defendants who were not a

8

danger, but only verbally abusive." *Id.*, p. 9. Merrill points out that in his deposition, Slager testified that "during his tenure at the South Bend Police Department, [he] has never had any courses specifically dealing with intoxicated persons, and how to treat them or how to deal with them." *Id.* (citing Deposition of Chris Slager, Plaintiff's Exhibit C, p. 14). Slager also testified that "he also did not receive any manuals from the South Bend Police Department about intoxicated persons and how to deal with them." *Id.* "Slager also did not have any courses as a member of the South Bend Police Department on dealing with belligerent people who use profane language." *Id.* (citing Slager Deposition, p. 15). Merrill argues that apparently "the only training [he] received from the City of South Bend was a verbal judo course over three years ago. *Id.* (citing Slager Deposition, pp. 16-17). Slager also testified that he did "not recall receiving any manuals for that course." *Id.* (citing Slager Deposition, p. 17).[1] Finally, Slager testified that the South Bend Police Department does not have "set procedures for taking someone into custody who may be intoxicated that are different from a normal arrest, unless they pass out and have to have an ambulance." *Id.*, p. 10 (citing Slager Deposition, pp. 46-47).

Merrill concedes that "Hammer appears to have had more training from the South Bend Police Department . . ." although she points out that ". . . Hammer estimated that he received about one-half hour of training [in the area of handling belligerent or difficult individuals] over the years 2003 through 2008, which were part of other training, i.e., baton, taser or riot training, etc." *Id.*, p. 11 (citing Slager Deposition, pp. 13-15). Finally, Merrill argues that "[i]t appears

---

[1] Merrill concedes that Slager apparently took some courses or received some training in dealing with disorderly individuals while attending the Tennessee Law Enforcement Training Academy in 1999. Plaintiff's Memorandum, p. 10. However, Slager testified that he "has not been to the Indiana Police Academy other than to take tests." *Id.* (citing Slager Deposition, p. 15).

in this case that Officer Hammer may have received training on a yearly basis for about a half an hour of his sixteen hours of yearly training time that dealt with effectuating an arrest in a hostile situation. However, except for his verbal judo training over three years ago, Officer Slager has not received any training in this area." *Id.* Merrill concludes by arguing this amount of training is inadequate and "constitutes deliberate indifference . . . ." *Id.* Merrill claims that "Slager's deposition testimony contradicts Chief Boykins's testimony with respect to this type of training." *Id.*

Merrill is correct that the deposition testimony of Hammer and Slager (more so Slager) appears to contradict the assertions made by Chief Boykins. Again, Boykins states that the City "maintains a duty manual that contains specific guidance for police officers in regard to the use of force in arresting suspect[s] and effectuating arrests[.]," yet Slager testified that he did not recall ever receiving any manuals or written policy directives relating to the handling of intoxicated individuals. Also, Boykins stated that "all South Bend police officers receive initial training at the State police academy on arrests and the use of force in making arrests and all of the officers in this case underwent this training[.]" while Slager testified that he has never been to the Indiana Police Academy other than for the limited purpose of taking tests. Finally, Boykins states in his affidavit that "all of the South Bend police officers involved in this case . . . received ongoing training . . . on all aspects of the use of force in making arrests[.]," but neither Hammer nor Slager testified about having received such ongoing training.

It is possible that the precise amount and type of training Hammer and Slager received from the City is not completely clear from the state of the record as it exists presently in this case. But this is not a proper matter of inquiry for the court at the summary judgment stage.

Merrill has succeeded in raising a genuine issue of material fact concerning the training of Hammer and Slager in particular and all police officers in general by the City of South Bend. Accordingly, Merrill must be permitted to present this argument to a jury.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by the defendants is DENIED.

Date: July 28, 2009.

          /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana